## American Steel Foundries v. William Scherrer.

1. VERDICT—*when not disturbed*. Where the verdict of the jury in an action on the case for personal injuries appears to be sustained by the evidence, it will not be disturbed on appeal.

Action on the case for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

WISE and MCNULTY, for appellant.

M. R. and D. J. SULLIVAN, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Madison county, by appellee against appellant, to recover for a personal injury sustained by appellee while in the service of appellant as a laborer. Trial by jury. Verdict and judgment in favor of appellee for $450.

The declaration consists of three counts. These counts all proceed upon the same general theory, but the third more fully sets up the case as disclosed by the evidence, and is in substance as follows:

"That defendant was possessed of a certain plant for the manufacture of merchandise, which plant was equipped with railroad tracks on which cars and engines were used by defendant in its business. The plaintiff was a servant of defendant. That it was the duty of defendant to use reasonable care to avoid subjecting plaintiff to perils which were unknown to him, and also to use reasonable diligence

American Steel Foundries v. Scherrer.

to furnish him with reasonably safe machinery; but defendant, not regarding its duty in that behalf, negligently ordered plaintiff to hold a certain iron bar between an engine standing upon one of defendant's tracks and a coal car, which car was, at the time, standing partly upon the track with said engine and partly upon the switch track, while defendant pushed said car by means of the engine with the iron bar; that the said engine used by defendant was constructed for and intended to be used in loading heavy articles and was not intended for and was unsuitable for the purpose of moving the car as aforesaid for the reason said engine was not equipped with brakes, and that the appliances for stopping said engine were in a defective condition; that the holding of said iron bar between said engine and said car was attended with great peril because of the fact that said engine was not equipped with brakes or other means of readily controlling the same, which danger by reason of plaintiff's inexperience was unknown to him, but should have been known to defendant; that while plaintiff was attempting to place and hold said iron bar between said engine and car in obedience to the order of his foreman, the bar slipped and he was caught between said engine and the car because of the fact that said engine was without brakes and without suitable means of stopping it, by reason whereof defendant's servant in charge of said engine after discovering plaintiff's peril was unable to stop said engine in time to prevent plaintiff from being caught and plaintiff was thereby greatly crushed, bruised, etc.; and that plaintiff was in the exercise of due care and caution for his own safety."

Appellant was engaged in the business of manufacturing car supplies, and used in connection with its plant certain yards equipped with railroad tracks, where it loaded, unloaded and switched cars. It had in use a switch engine with which it usually did its switching, and a locomotive derrick called the "she," for general use in lifting and loading, and which was occasionally used to move a car with.

This derrick ran upon wheels, propelled by its own motive power. It was not equipped with brakes.

Appellee was twenty-five years old and had been working in the place where he was injured for about a week and a half. Before he began working in the yard, he had been working in the core room of the foundry for four years, during which time he did not have occasion to work with the "she," and did not know anything about the method of handling it.

On the Saturday preceeding the injury a car had been partially loaded with pig iron, one end of it was loaded, and upon coming to work Monday morning it was found necessary to move the car onto another track before the loading could be resumed. This was first attempted by the men pushing it, and when they had pushed it as far as they could, it stood with the loaded end on one track, and the other end on another; and the "she" stood wholly upon still another track. These tracks are designated in the abstract, as track "A," track "17" and track "18." Appellee states in his testimony what subsequently occurred, in substance as follows: "When we could not push the car any further the foreman told me to get a bar, put it between the engine and the car and shove it so as to clear the switch. I judge the bar would weigh about forty-five or fifty pounds.* When the foreman told me to get the bar, I got it off the engine and held it up against the end of the 'she' and walked along until it got to the end of the car. The force of the engine coming against the car caused the car to roll away a little. The force caused the bar to drop down a little, and as I went to raise it up, the engine came moving up upon me and before I could get it up, the bar went in under the car and it caught me. The 'she' mashed me against the car. The side of the car and engine where I was on, was closer than the other side, because there was an angle there. The end of the car was on one track and the 'she' on another. I had to hold the bar on an angle. One end of the bar was against the 'she' and the other I was holding up to the other end of the car, when it struck the car, the car bounded away and the bar dropped down and before I could get it up it caught on the lower edge,

American Steel Foundries v. Scherrer.

the bar clipped under the car and the engine came up to me and mashed me between the car and the engine. I tried to get out, but could not because the car and the engine were too close together on one side and the draw-bar in the center of the car, I could not get out on that side. I never knew anything about the engine; I had no business around the engine and was not working with it. I had used the bar once before I was injured, but then the car and the engine were on the same track." On cross-examination he said, "I did not give the signal for the man to come ahead.    *    *    * The second time the force of the derrick against the car caused the car to roll away, and the bar to drop, and before I could get it up again the 'she' was on me.    *    *    * There was nothing to prevent me from getting hurt, if the two came together while I was standing between them." The man in charge of the "she" testified, that he had been running it for about two weeks before the injury, that the switch engine had been doing the switching, and that the "she" had not been doing any switching except that morning; that they did not use the switch engine that morning because they were washing out its boilers; that the switch engine had steam brakes to it, and that the "she" had no brakes. This witness also says, that he saw the bar when it slipped and could not stop the "she" because it had no brakes or appliances with which to stop it in a hurry, and he further says that if the "she" had been equipped as the switch engine was he could have stopped it after he saw the peril, in time to have prevented the injury. There is very little conflict in the evidence.

We are of opinion that the jury was warranted in finding in favor of appellee, and we find no material error in the rulings of the trial court as to evidence or instructions.

The judgment of the Circuit Court is affirmed.

*Affirmed.*